**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT HAWKINS, | ) |
|                 Petitioner, | ) |
| | ) |
|     vs. | ) Civil Action No. 11-1217 |
| | ) |
| TABB BICKEL; and THE ATTORNEY | ) Judge Nora Barry Fischer/ |
| GENERAL OF THE STATE OF | ) Magistrate Judge Maureen P. Kelly |
| PENNSYLVANIA, | ) |
|                 Respondent. | ) |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody (the "Petition") be dismissed and that a certificate of appealability be denied.

### II. REPORT

On March 22, 2007, Robert Hawkins ("Hawkins" or "Petitioner") was convicted by a jury of kidnapping, unlawful restraint and simple assault of a 56 year old woman from India who was visiting Pittsburgh. On April 30, 2007, he was sentenced by the Court of Common Pleas of Allegheny County to 7 to 14 years of imprisonment. He now brings the present Petition, challenging the sufficiency of the evidence to convict him of kidnapping and the lesser included charges, and to challenge the admissibility of a physician's testimony at his trial. Because Petitioner fails to carry his burden to show that the state courts' adjudication of the claim of insufficient evidence was an unreasonable application of United States Supreme Court precedent, the issue does not merit relief. Because Petitioner procedurally defaulted the claim regarding the

admissibility of the physician's testimony, or, in the alternative, because the issue is meritless, this claim does not warrant relief. Hence, the Petition should be denied. Because jurists of reason would not find this disposition debatable, a Certificate of Appealability should likewise be denied.

### A. Procedural History

On June 22, 2005, Petitioner was charged in a Criminal Complaint filed in the Allegheny County Court of Common Pleas, Criminal Division, at CC No. 2005099141, with multiple crimes arising from the abduction and sexual assault of the female victim. The Criminal Complaint alleged as follows: Count One - Kidnapping, 18 Pa.C.S.A. §2901(a); Count Two - Unlawful Restraint,18 Pa.C.S.A. §2902; Count Three - Robbery, 18 Pa.C.S.A. §3701(a)(1)(i); Count Four - Rape, 18 Pa.C.S.A. §3121; Counts Five and Six - Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. §3123; and Count Seven - Simple Assault, 18 Pa.C.S.A. §2701(a). Petitioner's co-defendant, Calvin Henderson, was also charged with these crimes, as well as aggravated indecent assault and a second count of simple assault at CC No. 200511250.

On June 30, 2005, the Commonwealth of Pennsylvania (the "Commonwealth") filed a Petition for Preservation of Testimony, seeking a video deposition from the victim, who would be unavailable for trial because she was a citizen of India who had been visiting her daughter, son-in-law and granddaughter in the Shadyside section of Pittsburgh, at the time of the attack and she was going to return to India before the trial could commence. Petitioner's counsel, Stanley Greenfield, consented to the petition. The petition was granted and the video deposition took place in Pittsburgh on August 9, 2005. The victim spoke no English so she testified through the use of a translator regarding the incident.

On January 12, 2006, Petitioner filed a suppression motion seeking to suppress a

photographic identification of him. On May 19, 2006, Henderson's counsel filed a Motion in Limine to Exclude Hearsay Statements seeking the exclusion of statements made by the victim to Dr. Mehdi Rehmetullah, a translating physician, as the victim was undergoing treatment in the emergency room of UPMC Shadyside Hospital shortly after the attack. Petitioner joined this motion. The Court of Common Pleas denied both motions.

On July 10, 2006, a joint jury trial commenced before the Honorable Cheryl Allen in the Court of Common Pleas of Allegheny County. At the close of the trial, the jury found Petitioner guilty of kidnapping, unlawful restraint and simple assault, but acquitted him of the remaining charges. Thereafter, on October 3, 2006, the court sentenced Petitioner to a term of 84 to 240 months' incarceration.

On October 12, 2006, Petitioner, through counsel, filed timely post-sentence motions seeking a new trial, claiming that after-discovered evidence existed in the form of an eyewitness alleging that Petitioner was not involved in the incident. The court granted the motion and awarded Petitioner a new trial. At the new trial, the jury would only consider the charges of kidnapping, unlawful restraint and simple assault.

The second jury trial commenced on March 19, 2007. Attorney Greenfield continued to represent Petitioner. At the conclusion of this trial, the jury found Petitioner guilty of all charges. On April 30, 2007, the court sentenced Petitioner at the kidnapping conviction to a term of 7 to 14 years' imprisonment. No further penalty was imposed at the remaining charges.

On May 9, 2007, Petitioner, now represented by Attorney Ralph D. Karsh, filed post-trial motions, which included claims of trial counsel's alleged ineffectiveness, a challenge to the court's admission of Dr. Rehmetullah's testimony, and challenges to the sufficiency and weight of

the evidence. Following a hearing, the court denied these post-trial motions by order dated October 1, 2007.

On October 11, 2007, Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania, docketed at No. 1826 WDA 2007. On October 27, 2008, the Court of Common Pleas of Allegheny County filed its Opinion in response to the Statement of Errors Complained of On Appeal.[1] On June 29, 2009, Attorney Karsh filed a Brief for Appellant in which he raised the following issues:

> I. Whether the evidence presented at trial was insufficient to prove that the crimes were committed by two actors, and therefore insufficient to prove Hawkins guilty of kidnapping, unlawful restraint, and simple assault beyond a reasonable doubt?
>
> II. Whether the verdict was against the weight of the evidence?
>
> III. Whether the trial court erred as a matter of law, and therefore abused its discretion, in ruling the hearsay testimony of Dr. Rehmetullah admissible, as either for the purposes of medical treatment and/or as an excited utterance?
>
> IV. Whether trial counsel was ineffective for failing to call an alibi witness?
>
> V. Whether trial counsel was ineffective for failing to object to the translator interpreting the victim[']s testimony without first being certified or qualified as an expert?

ECF No. 12-2 at 11 (capitalization changed).

Following consideration of these issues for appeal, a three-judge panel of the Superior Court affirmed the judgment of sentence on April 13, 2010.

---

[1] The case was transferred to the Honorable Lester G. Nauhaus on February 11, 2008, following Judge Allen's election to the Pennsylvania Superior Court.

On or about May 10, 2010, Petitioner, acting pro se, filed a timely Petition for Allowance of Appeal to the Pennsylvania Supreme Court, docketed at No. 218 WAL 2010. However, on May 18, 2010, Attorney Karsh timely filed a counseled Petition for Allowance of Appeal that was docketed at No. 223 WAL 2010. As a result, the pro se appeal at No. 218 WAL 2010 was administratively closed.[2] The Supreme Court denied the counseled Petition For Allowance of Appeal on September 28, 2010.

On September 21, 2011, Petitioner filed the present Petition, accompanied by a Memorandum in Support of An Application for A Writ of Habeas Corpus ("Memorandum in Support"). ECF Nos. 3, 4. The Court ordered Petitioner to file an Amended Petition because in his original Petition, he indicated that his issues were written on the back of the pages of his habeas Petition but, in fact, there was no writing on the back of the pages. ECF No. 5. Petitioner then filed an Amended Petition on November 9, 2011. ECF No. 7. However, when the Amended Petition was scanned onto the docket, the backs of the pages were not scanned. The Respondents filed their Answer on February 14, 2012. ECF No. 12. On August 22, 2012, an errata entry was made on the Court docket in order to re-docket the Amended Petition to include scanning of the backs of the pages of the Amended Petition. ECF No. 14. Nonetheless, the Amended Petition, still failed to include a third issue, which Petitioner asserted was on the back of the page but which was not. However, the Memorandum in Support included the third issue that Petitioner sought to raise. ECF No. 4 at 2. On August 22, 2012, Petitioner filed his "Reply to the Answer" or Traverse. ECF No. 16.

_____

[2] Petitioner disputes that he was represented by Attorney Karsh or any counsel at the time he filed his pro se Petition for Allowance of Appeal. ECF No. 16 at 3. However, this dispute has no

( . . . footnote continued)

5

effect on the outcome of these proceedings.

**B. Applicable Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e). Section 2254 (d)(1), which, in light of Petitioner's arguments, is applicable herein, provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in Section 2254(d)(1). In Williams, the Court explained that Congress intended that habeas relief may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." The Supreme Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc), cert. denied, 528 U.S. 824 (1999)).   In elucidating the "unreasonable application" clause, the United States Court of Appeals for the Third Circuit in Werts v. Vaughn, explained that

> [i]n analyzing the "unreasonable application of" provision, we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices. A contrary holding would amount to de novo review which we have held is proscribed by the AEDPA. Thus, the appropriate inquiry at this juncture is whether the state court's application of Supreme Court precedent was objectively unreasonable.   Williams, 120 S.Ct. at 1521;   Matteo, 171 F.3d at 889-90.   In other words, "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."   Matteo, 171 F.3d at 890.

Werts v. Vaughn, 228 F.3d at 197 (some citations omitted).   Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law.   See Matteo, 171 F.3d at 888; Cockrell v. Dretke, 88 F. App'x 34, 38 (5th

8

Cir. 2004)    Under the "contrary to" clause, the "petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." Matteo, 171 F.3d at 888.    Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision.   Williams, 529 U.S. at 412 (the "statutory phrase [i.e., 'clearly established Federal law, as determined by the Supreme Court'] refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision.").

**C. Discussion**

Petitioner raises three grounds in the Amended Petition and Memorandum in Support on which he claims that he was being held in violation of the Constitution, laws or treaties of the United States.

1. Whether the evidence presented at trial was insufficient to prove that the crimes were committed by two actors, and therefore insufficient to prove [Hawkins] guilty of kidnapping, unlawful restraint and simple assault?

ECF No. 14 at 9.

2. Whether the verdict was against the weight of the evidence?

Id., at 11.[3]

─────────────────────

[3] In their Answer, Respondents point out that Petitioner's claim, asserting that the verdict was against the weight of the evidence, raises only a state law claim and, therefore, is not cognizable in federal habeas proceedings. ECF No. 12 at 29.   The Respondents are correct.   Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence"); Paolicelli v. Rozum, No. Civ.A. 10-1578, 2012 WL 2922754, at *4 n.3 (W.D. Pa. July 17, 2012) ("a claim that the verdict is against the weight of the evidence is purely a state law claim and, as such, solely within the cognizance of the state courts");   Davis v. Lavan, NO. CIV.03-40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004)("a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it requires an assessment of the credibility of the evidence

( . . . footnote continued)

3. Whether the trial court erred as a matter of law, and therefore abused its discretion in ruling the hearsay testimony of Dr. Rehmetullah admissible, as either for the purposes of medical treatment and/or as an excited utterance?

ECF No. 4 at 2.

## 1. Sufficiency of the Evidence

Petitioner contends that the evidence was insufficient to prove that there were two actors and so there was insufficient evidence to find that he committed any crimes. He bases this argument primarily on the victim's statement while she was being questioned in the emergency room, immediately after the attack, that there were two attackers but when she was subsequently interviewed she failed to state that there were two actors. Petitioner raised the same claim in his direct appeal to the Pennsylvania Superior Court.

The Superior Court thoroughly addressed this issue on the merits.

Hawkins first argues that the evidence was insufficient to prove, beyond a reasonable doubt, that there were two actors involved in the assault.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable

---

presented at trial, and a state court's credibility determinations are binding on a federal habeas court."). In his Traverse, Petitioner concedes that the weight of the evidence claim fails to raise a federal claim. ECF No. 16 at 1 – 2, ¶¶ 2 - 5. Accordingly, this issue will not be further addressed.

doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be considered. Finally, the trier of fact while passing upon the credibility of witness and the weight of the evidence produced, is free to believe, all, part or none of the evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa. Super. 2003) (citations omitted).

The record in the instant case shows the following. Dr. Mehdi Rehmetullah testified that he was working as a physician at UPMC Shadyside on June 19, 2005. N.T., 3/19-22/07, at 16. At that time, he was asked to assist the emergency room physician in interpreting for a patient, H.K., who spoke Hindi. *Id.* Dr. Rehmetullah stated that he has spoken Hindi since he was born, and that it is like his second language. *Id.* at 17. According to Dr. Rehmetullah, Dr. Jennifer Brandeis, the emergency room physician, asked H.K. how many assailants were involved in the attack upon her, and H.K. responded that there were two assailants. *Id.* at 23. Dr. Rehmetullah said one of the assailants was driving and one of them raped her. *Id.* Dr. Rehmetullah indicated that H.K. was "very traumatized" and was crying at the time he spoke with her. *Id.* at 22.

Dr. Brandeis, a physician working in the Emergency Room at UPMC Shadyside on June 19, 2005, testified that H.K., through a translator, stated that more than one person was present during the assault, but one person had sexually assaulted her. *Id.* at 149. Dr. Brandeis administered conscious sedation to H.K. for the pelvic exam because H.K. was emotionally upset and in a lot of pain. *Id.* at 152.

Detective Anthony Ciummo of the Pittsburgh Police Department testified that he interviewed H.K. about a week after June 19, 2005. *Id.* at 191. Detective Ciummo reported that H.K. had stated that one person had attacked her. *Id.* at 297-98.

H.K. testified by video deposition taken approximately two months after the attack. In her deposition, H.K. referred to only one perpetrator. She was not specifically asked how many perpetrators were involved. Deposition of H.K., 8/9/05, at 55-72.

Other witnesses testified that they observed only one assailant: Toni Morrison ("Morrison"), a nurse at UPMC Shadyside, testified that on June 19, 2005, she observed a man and woman struggling near a van, saw the man throw the woman into the van and then get into the driver's seat and drive away, N.T., 3/19-22/07, at 82-84; and Orline Wilson, a security guard at Shadyside Hospital,

testified that she saw a man pulling a woman into a van and driving the van; however, the man was not Hawkins, whom she knew from the past. *Id.* at 238.

Although there was conflicting testimony as to the number of perpetrators involved, substantial competent evidence was offered by Dr. Rehmetullah that two persons were involved in the incident involving H.K. As the trier of fact is free to believe all, part, or none of the evidence, we conclude that Hawkins's claim that the evidence was insufficient to prove that two actors were involved in the assault lacks merit.

ECF No. 12-5 at 3 – 6.

Because the Superior Court addressed this issue on the merits, the deferential standards of the AEDPA apply to the Superior Court's determination that the evidence was sufficient to support a finding that there were two actors involved in the abduction and attack on the victim. Hence, the question before this Court is whether the determination by the Superior Court was contrary to or an unreasonable application of federal law as determined by the United States Supreme Court. See, e.g., Hurtado v. Tucker, 245 F.3d 7, 18 (1st Cir. 2001)(applying the AEDPA standards to state courts' adjudication of sufficiency of the evidence claim and holding that "The focus of the inquiry is on the state court decision"); Firmingham v. Yukins, 27 F. App'x 530, 537 (6th Cir. 2001) (criticizing District Court for directly applying sufficiency of evidence standard found in Jackson v. Virginia, 443 U.S. 307, 318-19 (1979), and holding that the District Court essentially engaged in de novo review of the legal issue of sufficiency of the evidence rather than asking whether the state court decisions addressing sufficiency of the evidence were contrary to or an unreasonable application of federal legal sufficiency of evidence standards); Johnson v. Henry, 5 F. App'x 584 (9th Cir. 2001).[4]

---

[4] The AEDPA's deferential standards apply notwithstanding the fact that the Superior Court in its analysis of the sufficiency of the evidence issue did not explicitly refer to the federal

( . . . footnote continued)

Petitioner seemingly argues only that that the decisions of the state courts were contrary to or an unreasonable application of Jackson v. Virginia, 443 U.S. 307 (1979). ECF No. 16 at 7. However, given that the Pennsylvania standard for determining the sufficiency of the evidence is the same as the federal standard, Petitioner cannot argue that the Superior Court's decision was contrary to federal law in the first sense, i.e., the Superior Court applied a rule of law which is contrary to the rule of law in Jackson v. Virginia. Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227 (3d Cir. 1992); Jackson v. Byrd, 105 F.3d 145, 153 (3d Cir. 1997) (Becker, C.J., dissenting) ("the standard of review for sufficiency of the evidence in Pennsylvania is identical to the federal *Jackson v. Virginia* standard.").

Of course, it would remain open to Petitioner to show that the state courts' adjudication of his claim was contrary to United States Supreme Court precedent in the second sense of "contrary to," i.e., demonstrating the existence of a United States Supreme Court case that was factually indistinguishable from the state court case, yet the state court decided it differently from the

---

constitution or to federal case law, including Jackson v. Virginia for determining sufficiency. Instead the Superior Court referred only to state cases for the sufficiency of the evidence standard, however, the Pennsylvania standard for sufficiency of the evidence is the same as the federal constitutional standard announced in Jackson. See, e.g., Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1232 (3d Cir. 1992)("In the case before us, Evans correctly points out that the test for insufficiency of the evidence is the same under both Pennsylvania and federal law. As in *Nadworny*, counsel for the state even conceded this point at oral argument.")(footnote omitted); Jackson v. Byrd, 105 F.3d 145, 153 (3d Cir. 1997) (Becker, C.J., dissenting) ("the standard of review for sufficiency of the evidence in Pennsylvania is identical to the federal *Jackson v. Virginia* standard."). Thus, because the state and federal tests for sufficiency are the same, this court applies the AEDPA deferential standard of review to the state court determinations. See, e.g., Valdez v. Ward, 219 F.3d 1222, 1238 (10th Cir. 2000)(where state appeals court did not cite federal law but instead applied state caselaw regarding sufficiency of the evidence, the United States Court of Appeals for the Tenth Circuit concluded that the two standards were the same, and consequently applied the AEDPA deferential standard of review).

United States Supreme Court.   Petitioner has not done so in this case however.   Even if we assumed for the sake of argument that Petitioner's case was "factually indistinguishable" from the case of <u>Jackson v. Virginia</u>, the Court in <u>Jackson v. Virginia</u> denied relief, just as the Superior Court here denied relief on the issue of insufficient evidence.   Accordingly, Petitioner fails to show that the Superior Court's decision denying him relief was contrary to <u>Jackson v. Virginia</u>, in the second sense of "contrary to."

Hence, Petitioner is left with trying to establish that the Superior Court's decision was an unreasonable application of <u>Jackson v. Virginia</u>.   We find that Petitioner has not carried his burden to do so.   Given that there was evidence of record that there were two actors, as the Superior Court noted, and viewing this evidence in the light most favorable to the Commonwealth, we find even under de novo review that there was sufficient evidence of record for a rational trier of fact to conclude that there were two actors.   In light of the fact that even under de novo review, this Court finds the evidence sufficient, we find that Petitioner simply has not established that the Pennsylvania Superior Court's conclusion of sufficient evidence constituted an unreasonable application of any clearly established United States Supreme Court precedent. <u>See</u>, <u>e.g.</u>, <u>Nevada v. Jackson</u>, __ U.S. __, 2013 WL 2371469, at *2 (June 3, 2013) ("It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'") (quoting <u>Harrington v. Richter</u>, 562 U.S. __, __, 131 S.Ct. 770, 786 (2011)).   Accordingly, this first ground does not afford Petitioner relief.

## 2.  **Admissibility of Testimony of Dr. Rehmetullah**

The next issue raised by Petitioner in the Amended Petition is the issue of "[w]hether the

trial court erred as a matter of law, and therefore abused its discretion in ruling the hearsay testimony of Dr. Rehmetullah admissible, as either for the purposes of medical treatment and/or as an excited utterance."   ECF No. 4 at 2.    There are several problems with this issue.

First, as the Respondents point out, this issue as raised by Petitioner in state courts was solely an issue of state law and so Petitioner procedurally defaulted any related but distinct claim of federal law.   In addition, as the Respondents also point out, federal habeas corpus relief is limited to errors of federal law.   Respondents are correct on both points.

It is undisputed that a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254(a); Smith v. Phillips, 455 U.S. 209 (1982); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir. 1991). Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted.   Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991).

Second, to comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through at least direct appeal or other available procedures for judicial review.   See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), *abrogated on other grounds by*, Beard v. Kindler, 558 U.S. 53 (2009); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

For claims to be "fairly presented" in state court, claims raised in state court must be "substantially equivalent to those raised in federal court."   Doctor v. Walters, 96 F.3d at 678. Furthermore, not only must the legal theory presented to the state courts and the federal habeas courts be the same but the facts presented to the state courts underlying those legal theories must

be the same facts presented to the federal habeas court.   See, e.g., Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986)("Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts."); Mattis v. Vaughn 128 F.Supp.2d 249, 256-57 (E.D. Pa. 2001)("The petitioner must fairly present to the state courts all the claims made in his habeas corpus petition.   To satisfy the 'fair presentation' requirement, the state court pleadings must demonstrate that the legal theory and supporting facts asserted in the federal habeas petition are 'substantially equivalent' to those presented to the state courts") (citations omitted).

Third, "[i]t is also well-established that the issue of fair presentment is a useful approach for analyzing procedural default."   Verdin v. O'Leary, 972 F.2d 1467,1473 (7th Cir. 1992).   See also Nelson v. Washington, 51 F.3d 276 (Table), 1995 WL 156624, at *3 (7th Cir. 1995)("the fair presentment of federal issues discussed under exhaustion is also a useful approach for determining if procedural default has occurred."); United States ex rel. Sullivan v. Fairman, 731 F.2d 450, 453 n.4 (7th Cir. 1984)("Although a number of the cases cited in this opinion, including *Picard v. Connor*[, 404 U.S. 270 (1971)] and *Anderson v. Harless*[, 459 U.S. 4 (1982)], are exhaustion cases, the analysis dealing with whether a state court has been fairly apprised of potential constitutional ramifications of a claimed trial court error is equally applicable to waiver [i.e., procedural default] cases.").

Hence, as explained by the United States Court of Appeals for the Seventh Circuit:

The procedural default doctrine, which like the exhaustion doctrine is grounded in principles of comity, federalism, and judicial efficiency, normally will preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not [fairly] presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. Thus, when the habeas petitioner has

failed to fairly present to the state courts the claim on which he seeks relief in
federal court and the opportunity to raise that claim in state court has passed, the
petitioner has procedurally defaulted that claim.

Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004)(citations omitted).   The rule emerges from

the foregoing that, in order to avoid a procedural default of a federal law claim (the only kinds of

claims cognizable in a federal habeas petition), a federal habeas petitioner must have fairly

presented the federal law claim to the state courts and not just a similar or parallel state law claim

and if the petitioner fails to present the federal law claim and has no present means to do so in

state court, then the federal law claim has been procedurally defaulted.

As to the Amended Petition at issue, this Court concludes that because Petitioner failed to

fairly present to the state courts, the issue of the admissibility of Dr. Rehmetullah's testimony as

one of federal law,[5] the issue is procedurally defaulted to the extent that any federal law claim

could have arisen from such admission of the testimony.

A review of the brief filed by Petitioner in the Superior Court, wherein Petitioner raised

the issue of the trial court's abuse of discretion in permitting the admission of Dr. Rehmetullah's

---

[5]  Petitioner, through Attorney Karsh, did raise in post-trial motions, a claim that Attorney
Greenfield was ineffective for failing to challenge the admissibility of Dr. Rehmetullah's
testimony on Sixth Amendment confrontation clause grounds but raising such an ineffective
assistance claim does not raise or "fairly present" the underlying substantive claim of the
confrontation clause being violated.   An ineffectiveness claim and a confrontation clause claim
are two different claims. Rose v. Palmateer, 395 F.3d 1108, 1112 (9th Cir. 2005) (petitioner's
claim that counsel was ineffective in failing to raise alleged Fifth Amendment violation did not
fairly present underlying claim of Fifth Amendment violation as such claim, although related, was
distinct and had separate elements of proof, and should have been separately and specifically
presented to state court). If anything, the claim that Attorney Greenfield was ineffective for not
raising the confrontation clause issue only confirms that this confrontation clause issue was not
raised at trial.   Consequently, the claim that the confrontation clause was violated by Dr.
Rehmetullah's testimony was waived for appellate review under state law and only properly
cognizable under state law in a PCRA petition, as a claim of ineffectiveness of trial counsel.
( . . . footnote continued)

testimony, reveals that Petitioner raised this claim solely as a claimed violation of Pennsylvania evidence law.   See, e.g., Petitioner's Superior Court Brief, ECF No. 12-2 at 37 to 45.   As the heading of that section of Petitioner's Brief makes clear, Petitioner was raising solely an issue of state evidentiary law regarding hearsay.   ("THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION, IN ADMITTING THE TESTIMONY OF DR. REHMETULLAH, WHICH WAS INADMISSIBLE HEARSAY TO WHICH NO HEARSAY EXCEPTION APPLIES UNDER THE RULES OF EVIDENCE.").   Id. at 37.   In the Superior Court Brief, Petitioner only argued trial court error on this issue based on the Pennsylvania Rules of Evidence, the comments to the Pennsylvania Rules of Evidence and decisions by the Pennsylvania state courts related to the Pennsylvania Rules of Evidence.   At no point did Petitioner assert any violation of federal law or the United States Constitution.

Instead, Petitioner argued in the Superior Court Brief that the trial court abused its discretion in admitting the testimony of Dr. Rehmetullah.   This is insufficient to raise a federal law claim.   In Wilson v. Briley, 243 F.3d 325 (7th Cir. 2001), the United States Court for the Seventh Circuit explained that:

> "Abuse of discretion" and "improper factors" are not terms that Illinois lawyers and judges, by quirk of local legal idiom, use to articulate constitutional arguments. To the contrary, abuse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards .... Indeed, the fact that Wilson relied upon state cases which engaged in a non-constitutional analysis based solely on state law principles belies the notion that the Illinois appellate court should have understood that Wilson was invoking his rights under the U.S. constitution.

---

Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002).

Id. at 328 (citations omitted).   Indeed, what the court said in <u>Wilson v. Briley</u>, applies equally

here. <u>See id.</u> at 37 – 45 (Petitioner cited solely to state court cases in his appellate brief to the

Superior Court, which state court cases engaged in only state law evidentiary analysis with respect

to hearsay and its exceptions, never once citing any federal case law or federal analysis).[6]

Accordingly, based upon Petitioner's failure to raise this issue as one of a federal law violation in

the state courts, and given that any attempt to now raise this claim in the state courts would be

time barred under the PCRA,[7] he has procedurally defaulted any federal law claim related thereto.

Nor has he shown cause and prejudice nor a miscarriage of justice.   Accordingly, this issue does

not merit any federal habeas relief.

Petitioner does assert that he did raise some federal constitutional claim, which was

apparently a Sixth Amendment confrontation clause issue with respect to Dr. Rehmetullah's

testimony as to what the victim said to him in Hindi at the hospital emergency room.   ECF No.

16 at 8.   In support of Petitioner's contention that he raised a federal constitutional claim in the

state courts, Petitioner cites his pro se Petition for Allowance of Appeal, wherein he cites to the

---

[6]   Given that Petitioner failed to "fairly present" the claim regarding the admissibility of Dr.
Rehmetullah's testimony as raising a federal constitutional claim at each level of state court
review, any legal presumption that the state courts addressed a federal constitutional claim is fully
rebutted.   <u>See</u>, <u>e.g.</u>, <u>Johnson v. Williams</u>, __ U.S.   __, 133 S.Ct. 1088, 1096 n.3 ("when a
defendant does so little to raise his claim that he fails to 'fairly present' it in each appropriate state
court, the *Richter* presumption is fully rebutted.") (citation and some internal quotations omitted).

[7]   <u>Tome v. Stickman</u>, 167 F. App'x 320, 324-25 (3d Cir. 2006)("Tome is now time barred from
filing a second PCRA petition presenting such a claim. See 42 Pa. Cons.Stat. § 9545(b) (setting a
one-year jurisdictional statute of limitations for PCRA actions). Consequently, . . .Tome has
procedurally defaulted his claim and we may not consider its merits unless he establishes 'cause
and prejudice' or a 'fundamental miscarriage of justice' to excuse his default."); <u>Seiler v.
Superintendent SCI-Coal Tp.</u>, No. 12-347, 2013 WL 1180762, at *4 (W.D.Pa. Feb. 20, 2013).

federal case of <u>Crawford v. Washington</u>, 541 U.S. 36 (2000)(a Sixth Amendment Confrontation Clause case). ECF No. 12-6 at 36 – 37.

There are at least three problems with Petitioner's argument. First, it does not appear that Petitioner was, in fact, raising a confrontation clause claim in the pro se Petition for Allowance of Appeal as opposed to just borrowing language from <u>Crawford</u> to contend that the testimony of Dr. Rehmetullah was simply unreliable. Petitioner in his pro se Petition for Allowance of Appeal appeared to simply argue that even if Dr. Rehmetullah's testimony as to what the victim said to him in the emergency room came within an exception to the hearsay rule under state law, it would still need to have an indicia of reliability under state law, which it did not have, and so, Dr. Rehmetullah's testimony was inadmissible as being unreliable. <u>See</u> ECF No. 12-6 at 36 – 37 ("'However, even if one of the above exceptions [to the hearsay rule under Pa.R.E. 803(1)-(2)] seemed to be applicable, a statement is not automatically rendered admissible. The statement must still be grounded and supported by indicia of reliability.' These words bring into focus here the following point:" and Petitioner goes on to block-quote from <u>Crawford</u>). Hence, under the facts of this case, Petitioner's mere quote of <u>Crawford</u> would not appear to be sufficient to put the state courts on notice that he was raising a federal constitutional issue.

Secondly, even if we could conclude that Petitioner raised such a federal claim in his pro se Petition for Allowance of Appeal by merely quoting <u>Crawford</u>, raising such a federal claim at that time in the course of the state proceedings simply came too late in those proceedings because a federal claim and indeed, any claim raised for the first time in a Petition for Allowance of Appeal, would be waived under Pennsylvania law, and hence, procedurally defaulted under federal law. <u>Commonwealth v. Agie</u>, 296 A.2d 741, 741 (Pa. 1972)("We have consistently held

that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court.")(citations omitted); Commonwealth v. Steffish, 365 A.2d 865 (Pa. Super. 1976); Commonwealth v. Perea, 381 A.2d 494, 496 (Pa. Super. 1977)("The reason our review is confined to the one issue is because the other issues were not raised in the trial below or in post-verdict motions. The appellate courts of Pennsylvania have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal."); Commonwealth v. Mitchell, 445 A.2d 721, 723 (Pa. 1982)(issues not raised on direct appeal are waived). See also Cruz v. McGrady, NO. CIV. A. 09-36, 2010 WL 4814692, at *8 (E.D.Pa., Nov. 24, 2010) ("Cruz objects to the conclusion that he procedurally defaulted this due process claim because he first raised the issue in his application for allocatur to the Pennsylvania Supreme Court, rather than at trial. . . . Cruz's failure to present this claim before the trial court or Superior Court on direct appeal renders it procedurally defaulted."). Cf. Castille v. Peoples, 489 U.S. at 351 (1989) (prisoner's submission of new claim to Pennsylvania Supreme Court on petition for allocatur was not "fair presentation" of that claim, for purposes of determining whether prisoner exhausted his state remedies).

Third and lastly, even if not procedurally defaulted, there would be no confrontation clause concern about Dr. Rehmetullah's testimony because Petitioner did, in fact, confront both Dr. Rehmetullah and the victim and had an opportunity to cross-examine both regarding their statements and whether there were one or two perpetrators. Petitioner had the opportunity to cross examine Dr. Rehmetullah. State Court Record, Jury Trial Transcript, at 14 – 29. Petitioner also had an opportunity to cross-examine the victim via the deposition of the victim taken in open court prior to her return to her homeland. See e.g., Michigan v. Bryant, 131 S.Ct.

1143 (2011) ("Whether formal or informal, out-of-court statements can evade the basic objective of the Confrontation Clause, which is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial."); Delaware v. Fensterer, 474 U.S. 15, 22 (1985) (per curiam) (observing that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to … expose [testimonial] infirmities through cross-examination"); Crawford, 541 U.S. at 59 n.9 ("when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").   Accordingly for any of the foregoing reasons, this claim concerning the admissibility of Dr. Rehmetullah's testimony does not afford Petitioner any relief.

For the foregoing reasons, Petitioner has procedurally defaulted any federal claim relative to the admission of the testimony of Dr. Rehmetullah.   Alternatively, the claim is meritless.

### D.   Certificate of Appealability

A certificate of appealability is required by 28 U.S.C. § 2253(c) before a petitioner who has been denied relief may appeal to a court of appeals.   As amended by the AEDPA, section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   In order to make a "substantial showing of the denial of a constitutional right," the habeas "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).   It does not appear that reasonable jurists would find the recommended disposition, should it be adopted, to be debatable or wrong.

Accordingly, a certificate of appealability should be denied.

## III.  CONCLUSION

Of the three issues that Petitioner raises, he concedes that his second issue concerning the weight of the evidence is not cognizable in federal habeas proceedings.   As to the remaining two issues, Petitioner failed to carry his burden to show that the state court's adjudication of his sufficiency of the evidence claim was contrary to or an unreasonable application of federal law and, as to the admissibility of Dr. Rehmetullah's testimony, Petitioner procedurally defaulted this claim.   Even if he had not procedurally defaulted the claim regarding the testimony of Dr. Rehmetullah, Petitioner has failed to show that the admission of such testimony violated any of his federal rights.   Because Petitioner fails to show that he is entitled to federal habeas relief, the Petition should be dismissed and a certificate of appealability should be denied because reasonable jurists would not disagree with this recommended disposition.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.   Failure to timely file objections will waive the right to

appeal.   Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).   Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in

accordance with Local Civil Rule 72.D.2.

                                        Respectfully submitted:


                                        *s/Maureen P. Kelly*
                                        MAUREEN P. KELLY
                                        UNITED STATES MAGISTRATE JUDGE

Dated:   June 12, 2012

cc:      The Honorable Nora Barry Fischer
         United States District Judge

         ROBERT HAWKINS
         GU-9603
         SCI Huntingdon
         1100 Pike Street
         Huntingdon, PA 16654-1112

         All counsel of record via ECF